FILED
United States Court of Appeals
Tenth Circuit

August 25, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 07-2231

FRANCISCO GAMBINO-ZAVALA,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:06-CR-02253-JEC)**

Brian A. Pori, Inocente P.C., Albuquerque, New Mexico.

William J. Pflugrath, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with him on the briefs), Office of the United States Attorney, Albuquerque, New Mexico.

Before **BRISCOE**, **LUCERO**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Responding to reports of multiple gunshots in an Albuquerque apartment complex, police conducted an early morning warrantless search of an apartment identified by a tenant as the source of the shots. During the sweep, the officers

found drugs and several guns. One of the men at the apartment, Francisco Gambino-Zavala, eventually pleaded guilty to unlawful possession of a firearm and ammunition by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). He was sentenced to fifty-seven months in prison and two years of supervised release.

He reserved his right to appeal the district court's suppression ruling, and argues the police conducted an illegal search of the apartment. He also contends his sentence should be vacated because it is procedurally and substantively unreasonable. We conclude that exigent circumstances justified the officers' sweep of the apartment, and the district court therefore did not err in rejecting his motion to suppress evidence. We also find no error with the court's sentence.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM Gambino-Zavala's conviction and sentence.

## I. Background

Around 4:45 a.m. on September 2, 2006, Albuquerque police responded to multiple 911 calls reporting gunfire in the area of the Crestview Apartment complex. The calls came from a variety of sources, including persons living in or near the complex. Several callers identified themselves, among them a military police officer, a local store manager, and two nearby residents. They reported hearing up to eight gun shots.

-2-

When police arrived, they spoke to a frantic and scared resident of Crestview. The tenant, who lived directly below apartment J, told the officers that people living in unit J had been shooting guns inside the apartment. She reported that they had created problems in the past and were known to carry guns. She also identified two cars in the parking lot used by these men. One of the cars blocked the other and could not be moved.

The three investigating officers turned to apartment J and knocked on the door. Responding to several minutes of knocking, Gambino-Zavala opened the door. When asked whether other people were inside the apartment, he responded "no." Two officers then "went in just to check to make sure that there was nobody else inside that was either injured or hurt or needed assistance, and also just to make sure there wasn't anybody in there that was armed with a gun, that could possibly hurt us or anybody else." R., Vol. III at 20–21. The sweep lasted one or two minutes. While conducting the search, they noticed a shotgun and ammunition in a bedroom closet.

After the sweep had been completed, Gambino-Zavala admitted he was an illegal alien. The officers then confirmed Gambino-Zavala had two outstanding misdemeanor warrants and arrested him. After arresting him, they conducted a more thorough search of the apartment and recovered the shotgun and ammunition. They also discovered a .38 revolver, an AK-47, and 253.4 grams of heroin.

The government charged Gambino-Zavala with unlawful possession of a firearm and ammunition by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). This charge was based only on the shotgun and ammunition the police discovered when they initially searched the apartment for victims. Gambino-Zavala filed a motion to suppress this evidence. After the court denied the motion, he pleaded guilty. The court sentenced him to fifty-seven months in prison and two years of supervised release.

## II.  Discussion

Gambino-Zavala argues the district court erred by denying his suppression motion. Furthermore, he argues his sentence should be vacated because it is procedurally and substantively unreasonable. We reject both arguments.

### A.     Suppression Motion

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Apperson*, 441 F.3d 1162, 1184 (10th Cir. 2006) (internal quotation marks omitted).

Gambino-Zavala contends the shotgun and ammunition discovered during the initial search of the apartment was the result of an illegal search. Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. McCullough*, 457 F.3d 1150, 1163

(10th Cir. 2006) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  Only under a limited number of circumstances may the police conduct a search without a warrant.  *See United States v. Walker*, 474 F.3d 1249, 1252 (10th Cir. 2007).  One exception to the warrant requirement is when police reasonably believe an emergency exists that makes it infeasible to obtain a warrant.

Here, the government argues that exigent circumstances justified the warrantless search of the apartment.  Exigent circumstances may justify a search where "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of . . . others, and (2) the manner and scope of the search is reasonable."  *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006); *see also Walker*, 474 F.3d at 1254 (describing the exigent circumstances exception).

### 1.  Reasonable Basis Existed for Conducting Search

To satisfy the first prong of the *Najar* test, the government must show the officers reasonably believed a person inside the home was in immediate need of aid or protection.  *Najar*, 451 F.3d at 718–19.

We evaluate whether a reasonable belief existed based on the "realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers."  *Id.* (internal quotation marks omitted).  Reasonable belief does not require absolute certainty; the Supreme Court has explained that the standard is more lenient than the more stringent probable cause standard.  *See id.* at 718

-5-

(explaining the Supreme Court in *Brigham City*[1] did not require the government to show the officers had probable cause to believe that a person inside the residence required immediate aid).

Moreover, it is well settled that officers can reasonably search for victims upon reports of gunfire. *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.6(a) (4th ed. 2007) (citing *United States v. Huffman*, 461 F.3d 777 (6th Cir. 2006) (holding officers' warrantless entry was proper to make sure no one injured inside when police responded to 911 call of gunshots and saw multiple bullet holes in windows and inside walls and furniture); *United States v. Holloway*, 290 F.3d 1331 (11th Cir. 2002) (holding anonymous 911 call about ongoing gunshots and arguing at certain house justified warrantless search of residence); *Tamez v. City of San Marcos*, 118 F.3d 1085 (5th Cir. 1997) (holding entry lawful where officers responded to a "shots fired" call and could hear noise in the house, but could not determine whether anyone was inside the house); *United States v. Donlon*, 909 F.2d 650 (1st Cir. 1990) (holding exigent circumstances exception applied where police entered home where there was a report of gunshots and children upstairs), *overruled on other grounds by United States v. Omar*, 104 F.3d 519, 522–23 (1st Cir. 1997)).

Based on the sequence of events here, we conclude the officers had reasonable belief, if not probable cause, to search the apartment for injured

---

[1] *Brigham City v. Stuart*, 547 U.S. 398 (2006).

persons. First, it is undisputed that a number of credible witnesses heard multiple gunshots from the apartment complex in the early morning hours and reported the incident to police in a number of 911 calls. Based on a contemporaneous interview with a shaken tenant who lived immediately below the apartment and heard the gunshots, the police pinpointed the shots to inside apartment J. The tenant advised police that several men lived in the apartment and they were known to carry guns. The tenant also identified two vehicles in the parking lot that belonged to the men who lived in apartment J. The two cars appeared to be temporarily parked and one could not be moved without moving the other, suggesting that the men were still inside the apartment.

Relying on this information, the officers concluded that an injured victim could be inside the apartment. And given the credible information indicating a number of gunshots had been fired inside the apartment, that conclusion was reasonable. Although Gambino-Zavala, when confronted, told the officers nobody else was inside, a reasonable officer under these circumstances could discredit that statement.

In short, the officers had objectively reasonable bases to believe there was an immediate need to search the apartment to protect the safety of others.

### 2. *The Manner and Scope of Search Was Reasonable*

The government must also show that the manner and scope of the search was reasonable. *Najar*, 451 F.3d at 718. To satisfy this requirement, the

government must show the officers "confined the search to only those places inside the home where an emergency would reasonably be associated." *Id.* at 720.

The government fulfilled this burden. The district court found the initial search was brief, lasting only one or two minutes, and limited to a sweep for additional people inside the apartment.

Gambino-Zavala nonetheless contends the government failed to produce sufficient evidence demonstrating that the shotgun and ammunition the police discovered during the initial search were actually in plain view. He argues that because the contraband was not in plain view, the officers exceeded the scope of a reasonable search. The government argues that Gambino-Zavala waived this argument before the district court, and it cannot be raised on appeal. Given the record before us, we agree.

When a defendant fails to properly challenge an error in the district court, the challenge is forfeited and may be reviewed on appeal only for plain error. *See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006); Fed. R. Crim. P. 52(b). But when a defendant waives an issue by relinquishing or abandoning it in the district court, he is precluded from seeking appellate review of the issue. *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007); Fed. R. Crim. P. 12(e).[2]

---

[2] "Th[e] waiver provision [of Rule 12(e) of the Federal Rules of Criminal Procedure] applies not only to the failure to make a pretrial motion, but also to

(continued...)

Gambino-Zavala waived below his claim the contraband was not in plain view. In response to Gambino-Zavala's suppression motion, the government argued the police found the shotgun and ammunition in plain view. Gambino-Zavala did not contest this argument in his pleadings before the district court, but instead asserted "the relevant facts in this case are essentially undisputed." R., Vol. I, Doc. 23 at 1.

During the evidentiary hearing, Gambino-Zavala tangentially suggested the government failed to produce sufficient evidence indicating the shotgun was in plain view. The government responded, "[T]hat issue was not rebutted by the defendant in my pleadings that were filed with the Court. *I could reopen just with that very brief testimony*, but I thought it was undisputed that the weapon was in plain view." R., Vol. III at 36 (emphasis added).

Gambino-Zavala's attorney did not contest the prosecutor's statement, nor did he insist that additional testimony be heard on this issue. By this action, he affirmatively abandoned his challenge to the officers' testimony about the contraband and waived any claim on appeal. And even if we were to consider the objection as forfeited, we see no error, plain or otherwise, given the record

---

[2](...continued)
the failure to include a particular argument in the motion." *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004) (internal quotation marks omitted). To avoid waiving an argument, the defendant must make "sufficiently definite, specific, detailed and nonconjectural factual allegations" supporting the suppression claim. *Id.*

strongly suggests the gun was in plain view. We therefore conclude the scope and manner of the search was reasonable.

Because the government satisfied both prongs of the *Najar* test, we agree with the district court's finding of exigent circumstances. The court therefore properly denied Gambino-Zavala's suppression motion because the warrantless search of the apartment was justified.

**B.    Sentencing**

Gambino-Zavala also argues his sentence should be vacated because it is procedurally and substantively unreasonable. We disagree.

We review a federal criminal sentence for reasonableness, giving deference to the district court under "the familiar abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *see also United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008) (noting that it is now "well settled that we review a district court's sentencing decisions solely for abuse of discretion"). Reasonableness "has both procedural and substantive components." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). We "must first ensure that the district court committed no significant procedural error" and then "consider the substantive reasonableness of the sentence." *Gall*, 128 S. Ct. at 597.

*1. Procedural Reasonableness*

"When considering the calculation of a Guidelines sentencing range, [w]e review legal questions *de novo* and we review any factual findings for clear error,

giving due deference to the district court's application of the [G]uidelines to the facts." *United States v. Tom*, 494 F.3d 1277, 1281 (10th Cir. 2007) (internal quotation marks omitted).

Gambino argues his sentence is procedurally unreasonable because the district court improperly prejudged the facts of his case, in violation of the Due Process Clause of the Fifth Amendment. He also argues insufficient evidence exists to support certain enhancements applied by the district court. The government, in turn, argues the sentence should be vacated because the district court applied a presumption of reasonableness in denying the defendant's requested variance.

### a. Bias

Gambino-Zavala argues the sentencing judge was biased based on comments the judge made in court. To demonstrate a violation of due process because of judicial bias, a defendant must show either actual bias or an appearance of bias. *Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997). The judge's actual state of mind, however, is not at issue. "The standard is purely objective, and [t]he inquiry is limited to outward manifestations and reasonable inferences drawn therefrom." *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (internal quotation marks omitted).

Ordinarily, a judge's comments "motivated by events originating within the context of judicial proceedings . . . are insulated from charges of bias." *Id.*

"Although a judge's remarks during the course of a trial may be critical, disapproving, or hostile to a party, usually they will not support a partiality charge." *Id.* at 1298 (internal quotation marks omitted). Therefore, when a defendant seeks to prove a violation of due process based on a judge's comments, the defendant must meet a high burden: the "judge's actions or comments [must] reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*

Gambino-Zavala argues the sentencing judge was biased because he twice told the prosecutor he wanted more testimony before he could give the defendant the enhancements he wanted to give him. These stray comments do not amount to actual bias. And any appearance of bias is countered by the context of the proceeding. The judge carefully considered the evidence (finding the issues a "close[] question"), based his findings on the facts presented, and issued a thoughtful ruling. R., Vol. V at 25. When Gambino-Zavala's counsel expressed concern that the district court had prejudged the facts at issue in the sentencing hearing, the judge responded "No I haven't. As a matter of fact, I haven't given this case a thought since the time until I read it now." *Id.* at 4.

Because the judge's comments did not reveal a degree of antagonism making fair judgment impossible, the sentence should not be vacated on this basis.

b. *Sufficiency of Evidence*

-12-

Gambino-Zavala also argues his sentence was procedurally unreasonable because the record contains insufficient evidence to support enhancements under §§ 2K2.1(b)(1)(A), (b)(4), and (b)(6) of the United States Sentencing Guidelines (USSG). The government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement. *United States v. Tindall*, 519 F.3d 1057, 1063 (10th Cir. 2008).

*USSG § 2K2.1(b)(1)(A)*

Under § 2K2.1(b)(1)(A), a defendant's offense level should be increased by two levels if "the offense involved between three and seven firearms." The district court applied this enhancement because it concluded Gambino-Zavala possessed the shotgun, AK-47, and .38 revolver discovered in the apartment.

Gambino-Zavala admitted in his plea agreement that he possessed the shotgun. Therefore, we only need to evaluate whether the district court erred in concluding he also constructively possessed the two other weapons. To establish possession, the government must show the defendant actually or constructively possessed the guns. *See, e.g.*, *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004); *cf. United States v. Ledford*, 443 F.3d 702, 713–14 (10th Cir. 2005) ("'Possession' under [a federal statute prohibiting felons from possessing firearms] may be either actual or constructive.").

To prove a joint occupant constructively possessed contraband, the government merely must show the defendant had knowledge of and access to the

-13-

contraband. *Ledford*, 443 F.3d at 714. "It is not necessary to show that the defendant intended to exercise . . . dominion or control, nor is it necessary to show that the defendant actually owned the weapons—mere possession is enough." *Id.*

Gambino-Zavala argues he did not have access to or knowledge of the .38 revolver or the AK-47 because he did not live at the apartment; the apartment belonged to his brother and a friend. He insists he was at the apartment the night in question because he was waiting for a ride home from his brother. We conclude the district court did not err in rejecting Gambino-Zavala's argument.

First, sufficient evidence exists to support the district court's conclusion that Gambino-Zavala had access to all areas of the apartment. Gambino-Zavala co-signed the lease for the apartment, and the lease characterized him as a "resident" of the unit. Furthermore, Gambino-Zavala admitted to possessing the shotgun found inside the bedroom closet of the one-bedroom apartment. A bedroom closet is typically a private area inside a renter's unit—a casual guest waiting for a ride typically would not have access to this closet. The combination of these facts supports the inference that Gambino-Zavala was a joint occupant who had access to all areas of the residence.

Second, the record supports the conclusion that Gambino-Zavala had knowledge of the two other weapons. Ammunition of various calibers were located in plain view in the same bedroom closet that contained Gambino-Zavala's shotgun. This ammunition put him on notice about the likely presence of

-14-

additional firearms in the premises. Furthermore, the .38 revolver and AK-47 were found in places of which a joint occupant of the apartment would likely be aware. The AK-47 was located under the bed in the same bedroom Gambino-Zavala kept his shotgun. The .38 revolver was kept in the living room closet.

Gambino-Zavala nonetheless suggests he could not have possessed the weapons because his fingerprints were not recovered from either of the guns. As explained above, however, the government did not need to prove the defendant exercised control over the weapons. Furthermore, the mere fact that the police could not recover his fingerprints does not mean he never handled these firearms. As Special Agent James Kraus testified, investigators were unable to recover any identifiable fingerprints from the weapons because so many people had touched them.

The combination of these facts, therefore, creates a reasonable inference that Gambino-Zavala constructively possessed all three of the firearms. The district court therefore did not abuse its discretion in applying the § 2K2.1(b)(1)(A) enhancement.

*USSG § 2K2.1(b)(4)*

Under § 2K2.1(b)(4), a defendant's offense level should be increased by two levels if "any firearm in [§ 2K2.1(b)(1)(A)] was stolen." At sentencing, the government produced a police report indicating the .38 and AK-47 were stolen. Gambino-Zavala did not challenge this report on appeal. We therefore conclude

the government produced sufficient evidence supporting the § 2K2.1(b)(4) enhancement.

*USSG § 2K2.1(b)(6)*

Under § 2K2.1(b)(6), a defendant's offense level should be increased by four if "the defendant used or possessed any firearm or ammunition in connection with another felony offense." We conclude the government produced sufficient evidence supporting this enhancement.

The district court reasonably held that Gambino-Zavala committed another felony—illegal possession with the intent to distribute 253.4 grams of heroin found in the apartment.[3] First, sufficient evidence exists showing that Gambino-Zavala had constructive possession of these drugs. As explained above, the record supports the conclusion that Gambino-Zavala had access to all areas of the apartment.

---

[3] Although Gambino-Zavala has not been convicted of this offense, his sentence may still be enhanced on the basis of this conduct. *See United States v. Allen*, 488 F.3d 1244, 1254–55 (10th Cir. 2007). The defendant's offense level,

> is calculated by accounting for "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1) (2004). Known as relevant conduct, this comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct.

*Id.*

-16-

Second, sufficient evidence supports the inference that Gambino-Zavala had knowledge of the heroin. The amount of drugs the police recovered was substantial and the drugs were located in an area of the apartment that a joint occupant would regularly access—a kitchen cabinet.

Third, the evidence supports the conclusion that Gambino-Zavala intended to distribute the drugs. The heroin was contained in multiple small containers amenable for customer sales. The large quantity further supports an inference of distributable amounts; an officer testified a user typically possesses less than one gram of the drug for his personal consumption.

Finally, the court reasonably concluded a sufficient nexus exists between the shotgun and the drugs to justify the enhancement. "[W]e have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement . . . is appropriate." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). Here, the shotgun had the potential to facilitate illegal drug transactions by helping Gambino-Zavala protect himself and his drug supply. The district court therefore did not err in applying the § 2K2.1(b)(6) enhancement.

Because the district court did not err in relying on §§ 2K2.1(b)(1)(A), (b)(4), and (b)(6) to enhance Gambino-Zavala's sentence, we conclude his sentence should not be vacated on this basis.

-17-

### c. *Presumption of Reasonableness*

The parties oddly part company on whether the sentence imposed was procedurally reasonable. The government takes the position that the district court erroneously applied a presumption of reasonableness when denying Gambino-Zavala's request for a variance. It points to the district court's Memorandum Opinion and Order, where it explained it "considered all of Defendant's arguments and nothing therein indicates that the *presumptively reasonable guideline range*, as calculated in the PSR, is anything other than an accurate reflection of all the factors the Court is required to consider[]." R., Vol. I, Doc. 44 at 11 (emphasis added). But Gambino-Zavala argued in his briefs that this error was harmless, and even reiterated this view at oral argument.

We agree the district court errs when its applies a presumption of reasonableness to a Guidelines sentence when considering the defendant's request for a variance. *See United States v. Arrevalo-Olvera*, 495 F.3d 1211, 1212–13 (10th Cir. 2007) (citing *United States v. Begay*, 470 F.3d 964 (10th Cir. 2006), *rev'd on other grounds*, 128 S. Ct. 1581 (2008)). When a district court commits a *Begay* error, we reverse the sentence unless the error is harmless. *Id.* at 1213. An error is harmless if the preponderance of the evidence demonstrates that the court's error did not affect its selection of the sentence imposed. *Id.*

Harmless error is usually established by showing the court applied a sentence above the low end of the Guidelines range. *Compare id.* at 1213–14

(holding *Begay* error was harmless because the court applied a sentence above the low end of the Guidelines range) with *Begay*, 470 F.3d at 976–77 (holding error was not harmless because the district court imposed a sentence at the bottom of the Guidelines range).  Under these circumstances, the error is harmless because "the district court clearly recognized that it had discretion to impose any sentence within the applicable range and chose a sentence above the minimum. . . .  As a result, we have no reason to think that the district court would impose a different sentence on remand." *Arrevalo-Olvera*, 495 F.3d at 1213–14 (internal quotation marks omitted).

Here, the district court erroneously articulated a presumption of reasonableness in its sentencing memorandum and imposed a sentence at the bottom of the Guidelines range.  We nonetheless conclude a remand for resentencing is unnecessary for two reasons.  First, Gambino-Zavala conceded the error was harmless.

Second, the record of the sentencing proceedings shows that the district court understood its discretion to grant a variance below the Guidelines range.  At the hearing, Gambino-Zavala's attorney notified the judge "that on Page 11 [of the court's memorandum opinion and order] the Court indicates that it considers the guideline range presumptively reasonable.  I think under *Rita*, that presumption applies only to cases that are on appeal, and I think the Court retains discretion, despite that appellate opinion."  R., Vol. VI at 3.  The judge responded "I know

-19-

that." *Id.* Gambino-Zavala's attorney then stated "Okay. I just want to make sure the record reflects that." No additional clarification was sought either by the defendant or the prosecution.

Based on this exchange, we are convinced the district court recognized it had full discretion to grant Gambino-Zavala a variance, but nonetheless chose not to. We therefore conclude the judge's erroneous use of the "presumption of reasonableness" language did not affect the sentence the judge imposed.

Because we conclude the error, if any, is harmless, we find Gambino-Zavala's sentence to be procedurally reasonable.

### 2. Substantive Reasonableness

On appeal, we accord a sentence within the Guidelines range a presumption of reasonableness. *United States v. Thompson*, 518 F.3d 832, 869 (10th Cir. 2008), *petition for cert. filed*, 76 U.S.L.W. 3655 (Jun. 5, 2008) (No. 07-11311). Gambino-Zavala attempts to rebut this presumption by arguing his sentence is substantively unreasonable because his "background, his lack of criminal activity, and his educational and employment history could all justify a reduced sentence." Aplt. Br. 40.

The district court has a wide range of discretion in striking a balance among the 18 U.S.C. § 3553(a) factors. *See Smart*, 518 F.3d at 808. The record indicates the district court reviewed the evidence presented by Gambino-Zavala, but decided it did not justify a variance. Due to the broad discretion courts are granted to

consider § 3553(a) factors, we conclude the district court's decision does not constitute an abuse of discretion.

### III.  Conclusion

In sum, the district court properly denied Gambino-Zavala's suppression motion because the exigent circumstances exception applied to the officers' warrantless search of the apartment.  Furthermore, Gambino-Zavala's sentence was both procedurally and substantively reasonable.  For these reasons, we AFFIRM his conviction and sentence.