FILED
United States Court of Appeals
Tenth Circuit

August 12, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOE BARROS,

    Defendant - Appellant.

No. 07-2284
(D. N.M.)
(D.Ct. No. 1:05-cr-02048-MCA-1)

---

ORDER AND JUDGMENT[*]

---

Before **LUCERO**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

Following the armed robbery of a pizza store, Joe Barros was convicted by a jury of: 1) obstructing, delaying and affecting interstate commerce in violation of 18 U.S.C. § 1951; 2) brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and 3) being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Barros complains about: the denial of his motion to suppress

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation -- (unpublished). 10th Cir. R. 32.1(A).

evidence and what he believes were procedural errors at sentencing. He also contends there was insufficient evidence to support his conviction. We affirm.

## I. BACKGROUND

On April 10, 2005, a man wearing a black leather jacket, hat and sunglasses entered a pizza store in Rio Rancho, New Mexico and pointed a silver pistol at Adriana Santora, the employee who greeted him. He declared, "[t]his is a robbery." (R. Vol. 3 at 14; Appellant's Brief, Ex. B). Jarrod Mora and Daniel Timmons, two other employees of the store, also saw the man, took notice of his gun and heard his demands for money. In response to the robber's demands, Timmons unlocked the register and gave him approximately eighty dollars. The robber then demanded money from a second register. Timmons responded there was no secondary register, only the safe which operated on a time-delay lock and would take fifteen minutes to open. The robber then left the store.

Santora ran to the back of the store and informed Thomas Cardenas, the store manager, of the robbery. Cardenas, Santora, and Mora ran to the front door and observed a vehicle leaving the parking lot. They described this vehicle as "gold-tannish," "light gold," "yellowish gold," or "goldish" in color. (Appellant's Brief, Ex. B, D; R. Vol. 3 at 71; 17.) Mora and Cardenas believed the car was a Chevrolet Monte Carlo with a New Mexico license plate number FKP999. During this time, Timmons reported the robbery to 911 dispatch and provided the vehicle description and license plate number as relayed to him by

-2-

Mora and Cardenas.

Police officers arrived shortly thereafter and took witness statements from the employees. Santora, Timmons, and Mora stated the robber was wearing a black leather jacket and sunglasses and agreed the gun was a silver or chrome handgun. Santora and Mora estimated the robber was between 5 feet, 6 inches and 5 feet, 8 inches tall. Timmons and Santora described his complexion as "dark."

The license plate reported by the employees was registered to a light gold 1985 Buick Coupe owned by Joe Barros and registered to an address of 1821 Peach Road in Rio Rancho (the same address was listed as his residence on his driver's license). This address was approximately a seven minute drive from the pizza store. The police checked Barros' criminal background and discovered he was on probation for second-degree murder and was affiliated with known gang members. The police notified his probation officer of a possible violation of the terms of Barros' release. The probation officer obtained a warrant for Barros' arrest.[1]

---

[1] As a condition of his parole, Barros' was required to wear an electronic monitoring device on his ankle and carry a hand-held global positioning satellite (GPS) transmitter which tracked his movements via a GPS satellite. The transmitter was able to detect the location of the ankle bracelet from approximately 30 feet. It indicated Barros had been outside of the transmitter's range on the day of the robbery for approximately six hours, including the time of the robbery. Testimony at trial revealed there were reported problems with transmitters like the one he was required to wear, but Barros had reported no malfunctions of his unit within the eight months before the robbery.

Based upon the identification of the license plate registered to Barros' vehicle, a general match to his physical appearance, and his criminal history, the police requested a warrant to search Barros' address and vehicle. The warrant application was prepared by Officer Brian Thacker. This was his first application in his eighteen months as a police officer and he used a previously prepared warrant application as a "template." (R. Vol. 3 at 123.) In relevant part, the narrative to support the application stated:

> Prior to affiant's arrival, the suspect fled the area in a gold in color Chevrolet Monte Carlo, bearing NM FKP-699.[2] The license plate returned to a Joe Barros located at 182 Peach Rd in Rio Rancho . . . . Santora stated that *the defendant* walked through the front door. She asked him if he was here to pick up an order. *The defendant* then pulled out a solid silver handgun, pointed it at Ms. Santora and stated, "Give me all the money." . . . Timmons opened the register and handed all the money to *defendant*. He then asked for the bottom register. Mr. Timmons told *the defendant* that everything was on a ten-minute time delay. *The defendant* then told Mr. Timmons and Ms. Santora to back away; he then walked out the door. The employees described the subject to be a dark complected male in his 40's. He was approximately 5'5", 130 pounds and was last seen wearing a black leather jacket and sunglasses . . . . Officers we[re] able to identify *the defendant* as a gang member . . . He is currently on probation/parole for murder . . . A warrant has since been issued on *the defendant* for a probation/parole violation.

(R. Vol. 1 at 41-42 (emphasis added).) A New Mexico district court judge reviewed and granted the warrant application.

---

[2] Thacker testified this was a "clerical error on [his] part" and should have read FKP-999. (R. Vol. 3 at 238.) Although Mora and Cardenas stated the robber drove a Chevrolet Monte Carlo, the license plate they provided matched Barros' Buick Coupe which matched the vehicle color they described. Viewed from the rear, both a Monte Carlo and Buick Coupe from the late 1980's have a similar trunk compartment.

Multiple police units arrived at Barros' residence to execute the search warrant. Approximately every fifteen seconds, Officer Peter Camacho used a public address system to announce the officers' presence. Almost an hour after the police arrived, Barros surrendered. He was wearing a black leather jacket. He was advised of his rights under the *Miranda* decision[3] and acknowledged he understood them. Camacho asked where the gun was located. After initially denying he knew anything about a gun, Barros told Camacho "[t]he gun is under my bed in the garage." (R. Vol. 3 at 264.) The officers found a silver handgun under the mattress in the garage. Two pairs of sunglasses were also seized. During later interrogation, Barros stated he was the only person with access to his vehicle on the day of the robbery but maintained he was not near the pizza store. Further investigation indicated Barros was experiencing financial distress around the time of the robbery. Less than three works before the robbery, he pawned a watch at a store located next to the pizza store. On the day of the robbery, he borrowed ten dollars from his daughter. At the time of his arrest, Barros had forty-eight dollars in cash but was unable to explain how he obtained the money.

Barros filed a motion to suppress the evidence obtained as a result of the search warrant. He argued Officer Thacker's use of the word "defendant" throughout the warrant application misled the issuing judge. He further asserted the employees' physical descriptions of the robber did not match Barros' physical

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

characteristics.[4]  Following a hearing, the district court rejected these arguments and denied Barros' motion.

## II.  DISCUSSION

Barros appeals from the district court's decision and also argues that even if the evidence obtained as a result of the search warrant is not suppressed, there is insufficient evidence to support his conviction.[5]

A.  Denial of the Motion to Suppress Evidence

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment."  *United States v. Gambino-Zavala*,

---

[4] In particular, Barros stated he is 5 feet, 3 inches tall while the employees described a robber between 5 feet, 6 inches and 5 feet, 8 inches.  Similarly, the employees described the robber's complexion as "dark" but none of them described him as Hispanic. (Appellant's Brief, Ex. B, C.)

[5] Barros also appeals from the district court's application of the sentencing guidelines.  However, any possible effect on his mandatory sentence (Barros was sentenced as a career criminal according to USSG §4B1.1) depends wholly on future state court rulings regarding previous felony convictions.  Barros recognizes he may, or may not, accomplish anything in the state habeas proceedings and concedes this issue is likely not ripe for review as a result.  He is correct.  We are without jurisdiction to consider the hypothetical outcomes of his habeas petitions.  *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (judgments of federal courts only resolve real and substantial controversies and do not proffer advice on hypothetical facts).  Barros explains the challenge is meant to preserve his objection to the procedural sentencing errors and his ability to challenge the procedural reasonableness of his sentence if his state court convictions are overturned and the career criminal provision no longer applies.  His preservation of the objection is noted.

539 F.3d 1221, 1225 (10th Cir. 2008) (quotations omitted).

      1. *Franks* Violation

Barros maintains Officer Thacker misled the judge who issued the warrant so egregiously that the evidence must be suppressed. Specifically, he argues Thacker's use of the word "defendant" synonymously with "suspect" in the warrant application improperly suggested Barros was the robber. The district court held a hearing, as prescribed by *Franks v. Delaware*, 438 U.S. 154 (1978), to determine if "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. The district court concluded the use of the word "defendant" was not used to mislead the issuing judge and there was no knowingly or intentionally false information in the warrant application. We review for clear error. *Gambino-Zavala*, 539 F.3d at 1225.

Barros has failed to make the showing required by *Franks*. 438 U.S. at 155-56. At best, he has shown the police officer who drafted the warrant was sloppy and mistakenly used the word "defendant" in place of "suspect" or "robber." The misuse of language came from Thacker's inexperience, not malice or unbridled zeal. "[A] misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, does not invalidate a warrant." *United States v. Colonna*, 360 F.3d 1169, 1174

(10th Cir. 2004). The application succinctly sets forth the recollections of the eyewitnesses and the facts supporting the warrant request. The experienced issuing judge was unlikely to be misled by such technicalities. There was no reason to invalidate the warrant on *Franks* grounds.

2. Probable Cause to Issue Warrant

Barros also claims the warrant lacked probable cause. A judge's role in considering an affidavit in support of a warrant requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of some crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We are quite deferential to a judge's decision to issue a warrant and "need only ask whether, under the totality of the circumstances presented in the affidavit, the [issuing] judge had a 'substantial basis' for determining that probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting *Gates*, 462 U.S. at 238-39). Probable cause to search a location does not depend on direct evidence or personal knowledge that evidence or contraband is there. *See United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). Rather, an affidavit supporting a warrant application need only establish a "nexus between the objects to be seized and the place to be searched for them [which] . . . would warrant a person of reasonable caution to

believe that the articles sought would be found at the place to be searched." *Id.*

Barros claims inconsistencies between the eyewitness' accounts were not fully disclosed in the warrant application. The eyewitness' reports contained minor discrepancies,[6] but they provided the police with sufficient information to begin a search for the robber's identity. The license plate number identified a car similar in style and color to the witness' descriptions. That the witnesses did not identify the correct make and model of the car is of no consequence; their descriptions identified a gold or tan colored car consistent with the vehicle registered to the reported license plate. The registered owner of the vehicle – Barros – also matched the witnesses' descriptions of the robber. The minor discrepancies concerning the suspect's height and complexion did not substantially conflict so as to create substantial doubt regarding the robber's physical appearance. *See Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) (omission must show recklessness which calls the truth of the allegations into question); *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (omitted information must be "clearly critical" to the finding of probable cause in a warrant to require reversal).

The warrant clearly noted a robbery took place and a suspect matching

---

[6] The witnesses' statements regarding the suspect's height varied by two inches; they agreed he was of dark complexion (Timmons described the suspect as "black" when calling 911 to report the robbery, only the suspect's complexion – not his ethnicity or race – was mentioned in the witness statements and Thacker was unaware of the substance of the 911 call). One report estimated the robber's age to be in the 45-55 year range.

Barros' description fled the scene in a car similar in color to Barros' vehicle and bearing license plates registered to Barros. These statements established connections between Barros and the robbery and provided probable cause to believe evidence of the robbery might be found in Barros' car and residence. *See Artez*, 389 F.3d at 1111. The judge's approval of the warrant application was supported by information sufficient to lead even the most cautious jurist to recognize the existence of probable cause.[7]

B. Insufficiency of the Evidence to Support Conviction

Barros contends that absent the evidence found during the execution of the search warrant, there was insufficient evidence to support his conviction. However, he candidly acknowledges that if evidence is not suppressed it is "almost certainly" sufficient to sustain his conviction. (Appellant's Reply Brief at 4.) He is *almost* correct. The evidence presented to the jury is certainly sufficient to sustain his conviction.

We review the record for sufficiency of the evidence de novo. *United States v. Nelson,* 383 F.3d 1227, 1229 (10th Cir. 2004). "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the

---

[7] Barros further quarrels with the district court's alternative holding denying suppression — inevitable discovery. It is unnecessary for us to reach that issue.

government." *Id.* "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury." *United States v. Summers,* 414 F.3d 1287, 1293 (10th Cir. 2005). "Rather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'considering the collective inferences to be drawn from the evidence as a whole.'" *Nelson,* 383 F.3d at 1229 (quoting *Wilson,* 107 F.3d at 778). "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Burkley,* 513 F.3d 1183, 1188 (10th Cir.) (brackets and internal quotation omitted), *cert. denied*, 128 S. Ct. 2979 (2008).

Barros was charged with violating 18 U.S.C. §§ 1951 and 924(c)(1)(A)(ii).[8] The evidence discussed in detail above was more than sufficient to support Barros' conviction. As to his being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) there can be no

---

[8] 18 U.S.C. § 1951 states:
Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or . . . commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined . . . imprisoned . . . or both. 18 U.S.C. § 924(c)(1)(A)(ii) is violated when a defendant uses, carries, or brandishes a firearm "during and in relation to any crime of violence".

doubt. The parties stipulated to Barros' prior felony conviction (R. Vol. 3 at 270) and he directed the officers to a loaded firearm beneath the mattress in his room.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge