FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEO STEBAN CHUMWALOOKY,

    Defendant - Appellant.

No. 25-5009
(D.C. No. 4:23-CR-00246-JDR-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **KELLY**, and **MORITZ**, Circuit Judges.[**]
_____

Defendant-Appellant Leo Chumwalooky pled guilty to Sexual Abuse of a

Minor in Indian Country.  18 U.S.C. §§ 1151, 1153, & 2243(a); II R. 73.  During

sentencing, the district court applied a sentence enhancement because the victim

"was in the custody, care, or supervisory control of the defendant[.]"  U.S.S.G.

§ 2A3.2(b)(1).  Mr. Chumwalooky now appeals from his sentence, arguing the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

district court erred in finding he was the victim's temporary caretaker.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

We assume the parties are familiar with the facts and summarize them only briefly.  Mr. Chumwalooky is the older half-brother of M.W., the minor victim.  II R. 73.  M.W.'s guardian occasionally brought him to stay overnight with Mr. Chumwalooky.  III R. 18–19.  Mr. Chumwalooky resided on the same property as two other adult relatives[1] but in a separate house.  Id. at 19.  During two of the overnight visits, Mr. Chumwalooky initiated sexual acts with M.W.  II R. 73–74.  M.W. wrote about it in his diary, which his guardian found and reported to the Cherokee Nation Marshal Service.  Id. at 73.  At the time, Mr. Chumwalooky was eighteen years old and M.W. was fourteen years old.  Id.; III R. 18.

The Presentence Investigation Report (PSR) recommended a base offense level of eighteen and a four offense-level sentence enhancement under U.S.S.G. § 2A3.2(b)(1) because M.W. was a minor in the custody, care, or supervisory control of the defendant.  II R. 75.  The PSR found that "M.W., who was 14 years old, stayed the night at [Mr.] Chumwalooky's house when the sexual assaults occurred."  Id.  Mr. Chumwalooky objected to the enhancement, arguing that this was not a case of guardianship or baby-sitting, as contemplated under the Sentencing Guidelines.  III R. 14–15.  As the district court recognized, the government bore the burden of

---

[1] At sentencing, defense counsel indicated that Mr. Chumwalooky's great-great grandmother and great aunt lived on the property.  III R. 20–21.

proving the facts underlying the enhancement by a preponderance of the evidence. Id. at 23–24.

At the sentencing hearing, the parties stipulated to proceed by proffering what M.W.'s guardian would say if called to testify on the matter. Id. at 17–18. The government proffered that M.W.'s guardian "occasionally . . . allow[ed] [M.W.] to visit with [Mr. Chumwalooky] at his home because [Mr. Chumwalooky] was an adult." Id. at 18. She understood Mr. Chumwalooky to be "the responsible person in that situation, and she entrusted . . . M.W.[] to be under his care during those visits." Id. at 18–19. The visits were also overnight. Id. at 19. Mr. Chumwalooky's counsel proffered that "the purpose of these visits was not . . . for Mr. Chumwalooky to . . . take care of the victim, but, rather, to establish a relationship between the two of them[.]" Id. at 20. Further, Mr. Chumwalooky and M.W. would stay in the "guesthouse," while the two other adults stayed in the main house "100 or 200 yards" away, and all parties had access to both houses. Id. at 20–21.

The court acknowledged that section 2A3.2(b)(1) "is intended to have broad application and is to be applied whenever the minor is entrusted to the defendant, whether temporarily or permanently." Id. at 23 (quoting U.S.S.G. § 2A3.2(b)(1) cmt. n.2(A)). It then reached the following conclusion:

> In considering the proffers that have been made by both the government and the defendant . . . there is a sufficient relationship under 2A3.2(b)(1) such that the minor victim in this case was in the temporary custody of Mr. Chumwalooky during the times that the sexual assaults occurred . . . [and] that the minor victim was put into the care of Mr. Chumwalooky in the guesthouse for purpose of developing some type of

3

a familiar — familial or brotherly relationship between the two . . . [which] satisfies the purposes of [s]ection 2A3.2(b)(1).

Id. at 24. The court overruled Mr. Chumwalooky's objection, adopted the PSR as to its findings of fact, and adopted the enhancement. Id. at 24–25. Mr. Chumwalooky was sentenced to sixty-three months' imprisonment and fifteen years' supervised release. Id. at 60–61.

### Discussion

Mr. Chumwalooky appeals from his sentence, arguing the court erred in applying the enhancement because he was not M.W.'s temporary caretaker. Aplt. Br. at 6–7. In reviewing sentencing issues, we review legal questions de novo and factual findings for clear error. United States v. Blackbird, 949 F.3d 530, 531 (10th Cir. 2020). Whether the government has presented sufficient evidence under section 2A3.2(b)(1) is a factual question subject to clear error review. See id. at 532–33. Under the clear-error standard, we "will not reverse the lower court's finding of fact simply because we would have decided the case differently." United States v. Wilfong, 475 F.3d 1214, 1218 (10th Cir. 2007) (citation modified). "Rather, we ask whether, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." Id. (citation modified).

The guidelines provide for a four-level enhancement for sexual abuse "[i]f the minor was in the custody, care, or supervisory control of the defendant[.]" U.S.S.G. § 2A3.2(b)(1). "Subsection [2A3.2(b)(1)] is intended to have broad application and is to be applied whenever the minor is entrusted to the defendant, whether

4

temporarily or permanently." Id. cmt. n.2(A). For example, the enhancement would apply to teachers, day care providers, baby-sitters, and other temporary caretakers. Id. In determining whether the enhancement applies, we "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." Id.

"[T]he government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." United States v. McDonald, 43 F.4th 1090, 1095 (10th Cir. 2022) (quoting United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008)). Mr. Chumwalooky argues that the government did not meet its burden to show he acted as a temporary caretaker. Aplt. Br. at 6–7. But given that the enhancement is meant to have broad application, the district court's findings are supported by the record and there are sufficient facts to find that he qualified as a temporary caretaker. III R. 23–24. As the government proffered, M.W.'s guardian "entrusted" M.W. "to be under [Mr. Chumwalooky's] care" because he "was an adult" and "the responsible person in that situation[.]" Id. at 18–19. No other adults were present in the guesthouse where they stayed overnight. Id. at 20.

Mr. Chumwalooky relies on United States v. Blackbird, in which we vacated a sentence where the district court applied the section 2A3.2(b)(1) enhancement. 949 F.3d at 532–33; Aplt. Br. at 9. In Blackbird, the minor victim lived with her grandmother while the defendant, her grandfather, lived in a nearby travel trailer because he was required to live separately as a convicted sex offender. 949 F.3d at

5

530–31. The defendant often entered the main house during the day, and on one such occasion he attempted to sexually assault the victim while she was home alone. Id. at 531. Vacating the sentence, we explained that "[s]ection 2A3.2(b)(1) requires that a defendant possess some degree of authority or control over the victim, rather than just mere proximity or familial relation to the victim." Id. at 532. That the defendant was the victim's grandfather was not enough on its own, and the government presented no evidence that he had any authority over the victim's life. Id. We also acknowledged that age is relevant, although not dispositive, and because the victim was fifteen years old, she was left home alone, not in the defendant's care. Compare id. at 532 n.2, with United States v. Chasenah, 23 F.3d 337 (10th Cir. 1994) (affirming the section 2A3.2(b)(1) enhancement where the victim was six years old). We summarized that the defendant merely "exploited an opportunity when he found [the victim] home alone." Blackbird, 949 F.3d at 532.

Mr. Chumwalooky first contends that section 2A3.2(b)(1) does not apply because M.W. was fourteen at the time of the abuse — only one year younger than the victim in Blackbird — and did not require constant care. Aplt. Br. at 11. Meanwhile Mr. Chumwalooky was only eighteen, an age in which many children are still under their parents' authority. Aplt. Br. at 11. He argues that both brothers were old enough to spend time alone together as "peers" without needing Mr. Chumwalooky's supervision. Aplt. Reply Br. at 5. But their ages are not dispositive, and unlike in Blackbird where "the government presented no additional evidence" of

6

the defendant's responsibility over the minor, 949 F.3d at 532 n.2, the government here did proffer such evidence, III R. 18–19.

Mr. Chumwalooky next argues that the government's evidence does not show "Mr. Chumwalooky knew he had parent-like authority over the minor or that the minor knew the guardian's expectations." Aplt. Br. at 11; Aplt. Reply Br. at 3–4. He contrasts his case with United States v. Chasenah, in which we affirmed an enhancement where the victim's mother told her to obey the elder family members in the household, which included the defendant, and the victim and other family members clearly understood that the defendant had general supervisory control over the victim. 23 F.3d at 338–39. But we do not read Chasenah to require explicit communication between the victim, the victim's guardian, and the defendant about the scope of the defendant's supervisory role. Nor do we see such a requirement in the enhancement itself. The enhancement covers situations where the defendant "[took] criminal advantage of the trust others have placed in him[.]" Id. at 339. Here, M.W.'s guardian trusted Mr. Chumwalooky to care for M.W. overnight, and he took advantage of that trust.[2]

Mr. Chumwalooky also argues that the purpose of M.W.'s overnight stays — to develop a sibling relationship — does not show he had authority because "'mere

---

[2] Mr. Chumwalooky also argues that the government proffered no evidence on whether the other two adults who lived in the main house had authority over M.W., or evidence of their involvement in coordinating the visits. Aplt. Br. at 12. But "it makes no difference that another person shares responsibility with the defendant for the care of the victim." Chasenah, 23 F.3d at 339.

proximity or familial relation to the victim' alone is [insufficient.]"  Aplt. Br. at 12 (quoting Blackbird, 949 F.3d at 532); Aplt. Reply Br. at 4.  Although the familial relationship on its own does not trigger the enhancement, the government's proffered evidence does indicate a temporary caretaking role.  We also reject Mr. Chumwalooky's argument that his role "[fell] woefully short of a parental figure." Aplt. Br. at 14.  Section 2A3.2(b)(1) does not require the defendant to have full parental authority.  U.S.S.G. § 2A3.2(b)(1) cmt. n.2(A) (providing as examples "teachers, day care providers, baby-sitters, [and] other temporary caretakers").  The enhancement is meant to have "broad application" to any temporary caretaker.  Id.  It applies to anyone who "abuses even peripheral or transitory custody, care, or supervisory control of the victim."  Chasenah, 23 F.3d at 339.

Mr. Chumwalooky's case is distinguishable from Blackbird in other respects. For one, the Blackbird defendant was not trusted to care for the minor — in fact, as a sex offender, he had to stay in a separate lodging away from minors.  949 F.3d at 531; Aplee. Br. at 10–11.  Meanwhile, M.W.'s guardian trusted Mr. Chumwalooky enough to let M.W. stay overnight, with no other adults present in the guesthouse and where he consumed alcohol and marijuana unsupervised.  III R. 18–19, 22–23.  And where the Blackbird defendant "exploited an opportunity when he found [the victim] home alone" in another dwelling, M.W.'s guardian specifically left M.W. in Mr. Chumwalooky's care in his home.  949 F.3d at 532; Aplee Br. at 11–12.

Although Blackbird requires the defendant to have authority or control over the victim, we find that such authority can be implied here.  M.W.'s guardian trusted

8

M.W. to stay with Mr. Chumwalooky overnight (and more than once) because he was a responsible adult, suggesting Mr. Chumwalooky had temporary caretaking authority over M.W.  Although Mr. Chumwalooky argues that M.W.'s guardian's subjective expectations cannot support the enhancement, Aplt. Reply Br. at 1, the district court certainly could consider how the relationship between M.W. and his brother came to be.  Given that the enhancement is meant to have broad application and although the evidence concerning the relationship is somewhat limited given the parties' stipulation to proceed by proffer, we cannot say that the district court clearly erred.[3]

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[3] Because we are convinced that the district court did not commit clear error, it is not necessary to discuss the case law that either party cites from outside our circuit or on other enhancements.  See Aplt. Br. at 12–15; Aplt. Reply Br. at 3; Aplee. Br. at 9–10.